IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.   No. CR 13-3673 RB

UNDRIO ANTWANNE ROEBUCK,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Defendant Undrio Roebuck, who pled to the crime of failing to register as a sex offender, objected to the way the probation officer categorized his underlying sex offense. (Doc. 35.) The Government responded that the probation officer discounted the seriousness of Mr. Roebuck's sex offense and made its own objection. (Doc. 41.) Having reviewed the parties' submissions and arguments, the Court sustains the Defendant's objection and overrules the United States' objection.

### I.   BACKGROUND

Defendant Undrio Roebuck was indicted for failing to register as a sex offender in violation of 18 U.S.C. §§ 2250(a) and 16913. (Indictment, Doc. 2.) The length of Mr. Roebuck's sentence is partially determined by the severity of his prior sexual conviction, as defined by the Sex Offender Registration and Notification Act ("SORNA"). *See* 42 U.S.C. § 16901 *et seq*. SORNA categorizes sex offenders into three tiers of increasing severity. 42 U.S.C. § 16911. Although the definitions seem clear, it is no easy task determining which tier a particular conviction falls under.

When considering Mr. Roebuck's potential sentence during plea negotiations the Assistant United States Attorney, representing the Government, and Assistant Federal Public Defender,

representing Mr. Roebuck, considered Mr. Roebuck to be a Tier I sex offender.  For Tier I sex offenders, the base offense level for failing to register is 12.  USSG § 2A3.5.  With this understanding, Mr. Roebuck plead to the Indictment.  (Doc. 26.)

In the pre-sentencing report, the Probation Officer determined that Mr. Roebuck was a Tier II sex offender with a base offense level of 14.  (PSR ¶ 18.)  Mr. Roebuck and his counsel objected to this characterization and insisted that Mr. Roebuck is a Tier I sex offender.  Mr. Roebuck argues that courts must take a "categorical approach" to determining the applicable Tier. Under the categorical approach, the court looks only to the elements of the statute for defendant's predicate offense and compares the elements to the tier definitions in the federal statute.  The Court does not consider the facts or conduct underlying the defendant's prior offense.

Re-evaluating the facts and the law, the Government changed its position.  After scouring the record for the underlying sex offense, the Government determined that Mr. Roebuck was a Tier III sex offender.  The Government urges the Court to adopt a non-categorical, circumstance-specific approach, examining the underlying facts of the prior conviction, unanchored by the elements of the criminal statute.

**II.    DISCUSSION**

The questions before the Court are (1) when determining the advisory Guideline sentence, should the Court use the element-based categorical approach or a circumstance-specific approach?; and (2) which tier level applies to Mr. Roebuck?  The Court concludes that when determining a defendant's sentence, it will follow the categorical approach.  Applying said approach, Mr. Roebuck is a Tier I sex offender.

## A. The Categorical Approach

Courts are in flux over the correct way to apply SORNA. Some courts apply a categorical approach while other courts employ a circumstance-specific approach. The Tenth Circuit voiced its own uncertainty over the issue. *See United States v. Forster*, 549 Fed. App'x 757, 676-80 ("[I]t is far from clear whether a categorical approach should be applied to SORNA."). On different occasions, the Tenth Circuit applied the SORNA statute using both methods. *Compare Forster*, 549 Fed. App'x at 676-80 (applying a categorical approach to determine the defendant's tier), *with United States v. Black*, 773 F.3d 1113 (10th Cir. 2014) (looking at the defendant's and victim's ages to determine whether defendant could be required to register under SORNA).

Some of the confusion over SORNA's application stems from the fact that the definitions in Section 16911 are applied to two related, but crucially different situations. The SORNA scheme contains both civil and criminal provisions. For the most part, SORNA is a non-punitive, civil statute. *See United States v. Lawrance*, 548 F.3d 1329, 1333 (10th Cir. 2008) ("SORNA is both civil in its stated intent and nonpunitive in its purpose."). To enforce the civil requirements, Congress created criminal penalties codified in United States Code, Title 18, Section 2250. *United States v. Lewis*, 768 F.3d 1086, 1089 (10th Cir. 2014). Sometimes courts are asked to interpret SORNA's definitions when considering if a defendant should be subject to the civil registration provisions. Other times, courts are asked to interpret the definitions when considering how to sentence a defendant charged with failing to register under SORNA.

Although courts strive to interpret statutes consistently, *Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517-18 (1992), the current interpretations of SORNA differ depending on whether the court is applying the civil or criminal provisions. All of the cases the Government cites for applying a

circumstance-specific approach to SORNA involve situations where a court was considering the civil provisions of the statute, namely whether a defendant is required to register as a sex offender. *See Black*, 773 F.3d at 1113; *United States v. Gonzalez-Medina*, 757 F.3d 425, 429 (5th Cir. 2014) (applying a circumstance-specific approach when determining if the defendant is exempt from reporting requirements under § 16911(5)(C)); *United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir. 2010) (examining underlying conduct when reviewing defendant's requirement to report); *United States v. Byun*, 539 F.3d 982, 992 (9th Cir. 2008) (applying a fact-based approach when determining if a defendant has to register as a sex offender). In contrast, courts interpreting SORNA's criminal penalties during sentencing have applied a categorical approach. *See Forster*, 549 Fed. App'x at 676-80; *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1133 (9th Cir.), *cert. denied*, 135 S. Ct. 124 (2014); *United States v. Taylor*, 644 F.3d 573, 576 (7th Cir. 2011); *United States v. Backus*, 550 F. App'x 260, 262 (6th Cir.) *cert. denied*, 134 S. Ct. 2153 (2014). The two different situations reveal a logical divide.

When applying SORNA's civil provisions, courts reason that the circumstance-specific approach helps effect Congress' broad purposes in enacting SORNA. SORNA's civil provisions created a "comprehensive national system for the registration of sex offenders." *Black*, 773 F.3d at 1113 (quoting 42 U.S.C. § 16901). As the Ninth Circuit in *Byun* notes, SORNA's "legislative history reveals substantial discussion of the necessity of identifying all child predators." 539 F.3d at 993. Given the congressional command, it is understandable that multiple courts have felt compelled to apply a circumstance-specific approach when determining if a defendant is required to register under SORNA. *But see United States v. Baptiste*, __ F. Supp. 2d __, No. EP-13-CR-2311-KC, 2014 WL 3672971, at *3 (W.D. Tex. July 24, 2014) (finding that the

4

Attorney General's federal regulations compel an element-based approach when determining if SORNA's registration requirements apply to a particular defendant).

The posture of courts sentencing registered sex offenders is different. When a defendant admits to being a sex offender under SORNA, the sentencing court metes a punishment for the failure to update registration, not for the predicate sex offense. In so doing, the court must "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Sentencing courts have defered to the utility of the categorical approach for analyzing a predicate sex offense. *Cabrera-Gutierrez*, 756 F.3d at 1133 (("[W]e follow the categorical approach established in *Taylor v. United States*."). Across a variety of statutes, sentencing courts employ the categorical approach. *See, e.g.*, *Taylor v. United States*, 495 U.S. 575 (1990) (explaining the categorical approach when considering a prior conviction under the Armed Career Criminal Act ("ACCA")); *James v. United States*, 550 U.S. 192 (applying categorical approach to the residual clause in the ACCA); *United States v. Koufos*, 666 F.3d 1243, 1250 (10th Cir. 2011) (applying categorical approach to determine base level offense for firearms cases under USSG § 2k2.1(a)); *United States v. Barraza-Ramos*, 550 F.3d 1246, 1249 (10th Cir. 2008) (applying categorical approach to determine base offense level in illegal reentry cases under USSG § 2L1.2(b)(1)(A)).

The Supreme Court recently reiterated its reasoning for using the categorical approach to determine predicate offenses during sentencing. *Descamps v. United States*, 133 S. Ct. 2276 (2013). In *Descamps*, the Supreme Court considered how a court should determine if a defendant's prior conviction could constitute a predicate offense under the ACCA. The Supreme Court considered congressional intent, Sixth Amendment implications, the practical difficulties of

5

a circumstance-specific approach, and the unfairness to defendants who previously entered into a plea bargain. The reasoning of *Descamps* holds true for categorizing underlying offenses under SORNA.

First, the Supreme Court analyzed the wording of the ACCA statute. Looking to the provision which requires three "previous convictions," the Court reasoned that this language shows "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* at 2287 (quoting *Taylor*, 495 U.S. at 600). The Court reasoned that this approach provides clarity to sentencing courts, defendants, and state legislators. "Congress . . . meant ACCA to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none." *Id.*

Similar to the ACCA provision, the SORNA statutory provisions for failing to register require the offender to be "convicted" of the offense. 42 U.S.C. § 16911(1) ("The term 'sex offender' means an individual who was convicted of a sex offense."). This alone could be "the relevant statutory hook" signaling a categorical analysis. *Moncreieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013) (reasoning that "conviction" is the "relevant statutory hook" requiring a categorical approach). The text of SORNA, however, is inconsistent.

The SORNA statute later states that a "sex offense" can be defined as "a criminal offense that is a specified offense against a minor." 42 U.S.C. § 16911(5)(A)(ii). The words "specified offense against" may suggest a circumstance-specific approach. *Byun*, 539 F.3d at 992. Other provisions sweep even more broadly. Subsection 7 states that a "specified offense against a minor" includes, among other definitions, "[a]ny conduct that by its nature is a sex offense against

a minor." 42 U.S.C. § 16911(7)(I). The term "any conduct" seemingly demands a fact-based approach. The Eleventh Circuit described this provision as a catch-all that "could not be any broader." *Dodge*, 597 F.3d at 1355.

The Court could again draw a distinction between the statutory provisions necessary to determine the civil versus the criminal requirements. But that is unsatisfying. In Subsection 3, the statute states that several crimes constitute Tier II crimes "when committed against a minor." 42 U.S.C. § 16911(3). This wording seems to require a court to look at the age of the victim. *Byun*, 539 F.3d at 992. *Cf. United States v. Hayes*, 555 U.S. 415, 418, 427 (2009) (holding that a domestic –relationship requirement found in 8 U.S.C. § 921(a)(33)(A) need not be an element of the predicate statue of conviction because holding otherwise would make the provision a "dead letter"). In short, the wording of the SORNA statute neither commands nor rejects the categorical approach. The Court must look to the other *Descamps* factors.

Second, the *Descamps* Court reviewed the Sixth Amendment implication. "Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty." *Descamps*, 133 S. Ct. at 2288. That in turn implicates a defendant's Sixth Amendment rights. Unlike the ACCA enhancements, neither party argues that changing the base offense level under SORNA would increase the prescribed statutory maximum. In that respect, the Sixth Amendment is not directly implicated. *See United States v. Stock*, 685 F.3d 621, 628 n.5 (6th Cir. 2012) ("[T]he failure-to-register guideline does not to our knowledge require a district judge to find any fact that increases the available penalty for a SORNA violation."). Determining that a defendant is a Tier III as opposed to a Tier I offender, however, could add eleven to sixteen months of imprisonment.

Although the defendant's constitutional rights are not directly implicated, many of the concerns underlying the Supreme Court's analysis of the Sixth Amendment issue do apply. Taking a circumstance-specific approach puts the later sentencing court in the uncomfortable position of questioning "what the defendant and state judge must have understood as the factual basis of the prior plea" or, in the case of a jury trial, what the jury members understood about the conviction. *Shepard v. United States*, 544 U.S. 13, 25 (2005) (plurality portion of the opinion). However, "the only facts the court can be sure the jury so found are those constituting elements of the offense . . . ." *Descamps*, 133 S. Ct. at 2287; s*ee also Shepard*, 544 U.S. at 26 (applying similar logic to plea agreements).

Third, the Court in *Descamps* considered the "daunting difficulties" that a circumstance-specific approach entails. *Id.* at 2289. Anything but a categorical approach requires:

> [S]entencing courts . . . to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial . . . . The meaning of those documents will often be uncertain. And the statements of fact in them may be downright wrong.

*Id.* Here, the Government urges the Court to look at an even broader sweep of evidence, including the probable cause statement and police reports. (Tr. 27:15-18, 28:21-23.) Such evidence is not necessarily reliable because the reporting officer can rely on hearsay and has no duty to disclose exculpatory evidence. To fairly determine the facts underlying the predicate conviction, the Court would have to conduct a mini-retrial of the underlying facts. The Supreme Court stated that "avoidance of collateral trials" is at "the heart of the decision" to apply the categorical approach. *Shepard*, 544 U.S. at 23. A retrial is an especially daunting task given that violators of SORNA's reporting requirements may have been convicted decades earlier. In this

8

case, the sexual offense occurred sixteen years ago.

The Court finds the practicality argument especially compelling given that the office first charged with formally evaluating a defendant's base offense level is the probation office. Probation officers are already asked to conduct detailed inquiries into a defendant's history, criminal record, and the nature of the instant offense. Asking a probation officer to also adjudicate the nature of the conduct underlying a predicate offense—notwithstanding the elements of the statute—puts a tremendous and precarious burden on the shoulders of probation officers. Employing the categorical approach is more efficient because it acts as "an on-off switch." *Descamps*, 133 S. Ct. at 2287. Once the judiciary determines a statute can or cannot serve as a predicate, the probation office can apply the ruling consistently in all future cases.

Finally, the Court in *Descamps* considered the potential inequities of the circumstance-specific approach. Specifically, the Court raised the concern that the fact-based approach "will deprive some defendants of the benefits of their negotiated plea deals." *Id.* Defendants waive their constitutional rights to plead to crimes, often in exchange for being charged with a lesser crime. *See id.* Under the circumstance-specific approach, "a later sentencing court could treat the defendant as though he had pleaded to [a more serious offense], based on legally extraneous statements found in the old record." *Id.* Such a system "would allow a later sentencing court to rewrite the parties' bargain." *Id.*

Although the concerns in *Descamps* do not perfectly align with the circumstances facing a sentencing court in the SORNA context, the reasoning is nonetheless persuasive. Given the practical and fairness considerations in *Descamps*, applying the categorical approach to Section 2250 violators is the best approach. The Government's two arguments advocating for the

circumstance-specific method on policy grounds do not change this analysis.

First, the Government argues that the categorical approach will reduce sex offenders' sentences based on technicalities and the vagaries of the laws.  The Government cites the Tenth Circuit's categorical approach in *Forster* for this proposition.  In *Forster*, the defendant was convicted under a state statute for a "gross sexual imposition" against a minor younger than 13 years of age.  *Forster*, 549 Fed. App'x at 759.  SORNA cross-references a federal statute that carves out a criminal category for sex offenses against a minor under 12.  42 U.S.C. § 16911(4)(A)(ii) (referencing 18 U.S.C. § 2244).  The Tenth Circuit held that the two statutes were comparable and "protect the same age group of minors from unlawful sexual contact."  *Forster*, 549 Fed. App'x at 769.  The Government explains that the Appeals Court must have glossed over the age gap and looked at the underlying age of the victim.  (Tr. 24:22-25:8.)  This, the Government argues, reveals the Circuit's desire to circumvent mere technicalities.  However, as the Tenth Circuit explained, it did not need to gloss over anything.  The relevant age definitions are identical "because [SORNA] expressly defines the scope of § 2244's substantive provisions, for purposes of the tier regime, to apply to only a 'minor who has not attained the age of 13 years.'" *Forster*, 549 App'x at 769 (quoting 42 U.S.C. § 16911(4)(A)(ii)).  Thus, the state statute in *Forster* is comparable to the Tier III definition in Section 16911.

The Government's age-gap technicality fears are not convincing given the broad wording in SORNA's tier regime.  The age cut-off for Tier III offenses is defined as under 13 years of age, regardless of the age references in the cross-referenced federal statutes.  Similarly, Tier II applies to "minors."  42 U.S.C. § 16911(3)(A).  A minor is defined as anyone under the age of 18.  42 U.S.C. § 16911(14).  As the Government argues, "§ 16911(3)(A) has the effect of expanding the

10

definition [of age under Section 2243] for the purposes of Tier II." (Doc. 41 at 7.) The definition of minor broadens SORNA's scope to remedy inconsistencies in the laws of the various states and territories.

Second, the Government raises the concern that the element-based approach will discount the seriousness of a defendant's prior crimes. The tier classification, however, only determines the base offense level in the Sentencing Guideline. The base offense level is a starting point, but not the final sentence. *See Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) ("The Guidelines provide a framework or starting point . . . for the judge's exercise of discretion."). Sentencing judges can exercise their discretion to depart upwards if the Sentencing Guideline does not reflect the grave nature of a defendant's crimes. *See* 18 U.S.C. § 3553(a)(1) (requiring a sentencing court to consider the "history and characteristics of the defendant"). The categorical approach does not foreclose a judge's discretionary determination.

In sum, given the fact that the Circuits reviewing sentencing under Section 2250 use the categorical approach, the considerations analyzed in *Descamps*, and a court's ability to consider relevant conduct, the Court concludes that it will apply the categorical approach. Defendant's objection to the presentence report is sustained.

### B. Applying the Approach

Although more practical and efficient than the circumstance-specific approach, the categorical approach is by no means easy to apply.

Mr. Roebuck was previously convicted under a Texas statute that defines sexual assault as a "person: . . . (2) intentionally or knowingly: (A) caus[ing] the penetration of the anus or female sexual organ of a child by any means." V.T.C.A. § 22.011(a)(2)(A). A "child" is defined as "a

person younger than 17 years of age." V.T.C.A. § 22.011(c)(1). The statute is a strict liability statutory rape statute. *Byrne v. State*, 358 S.W.3d 745, 747 (Tex. App. 2011).

Under the federal statute, the elements of Mr. Roebuck's predicate conviction do not make him a Tier III sex offender. To be considered Tier III, the crime has to be punishable by more than one year of prison and include an element of abuse against a minor under 13 years of age, kidnapping, or recidivism. *See* 42 U.S.C. § 16911(4). The statute under which Mr. Roebuck was convicted does not qualify as a predicate for Tier III sex offenses.

Turning to the next tier, a Tier II sex offender is anyone whose offense is punishable by more than one year of prison and, among other crimes, commits sexual abuse against a minor under the age of 18. 42 U.S.C. § 16911(3)(A)(iv). Through layers of cross-references, sexual abuse is, among other definitions, knowingly (1) engaging in a sexual act with another "by threatening or placing that person in fear;" (2) engaging in a sexual act with another who is "incapable of appraising the nature of the conduct;" (3) engaging in a sexual act with an individual between the ages of 12 and 16; (4) engaging in a sexual act with a ward; or (5) knowingly engaging in a sexual act without the other person's permission. 18 U.S.C. § 2244 (referencing Sections 2241-2243).

The statute under which Mr. Roebuck was convicted does not include any elements of force or non-consent. The most pertinent provision is Section 2243(a), which prohibits a "knowing[] . . .sexual act" with another person who (1) is between 12 and 16 years old; and (2) is at least four years younger than the offender. 18 U.S.C. § 2243(a). Importantly, Section 2243(a) allows a defendant to argue mistake of fact—that he "reasonably believed that the other person had attained the age of 16 years." *Id.* § 2243(c)(1). The Texas statue, in contrast, is a strict liability

statute which applies even if there is a mistake of fact. *Byrne*, 358 S.W.3d at 747. Thus, the Texas statute sweeps more broadly than the federal statute.

Because the Texas statute is broader than—and not identical or comparable to—the federal definition of the crime, Mr. Roebuck's prior Texas conviction cannot serve as a predicate for a Tier II sex offense. As a default, Mr. Roebuck is classified as a Tier I sex offender.

### C. Motion for a Downward Departure

The Defendant moves for two downward departures.

First, the Defendant asks that his Criminal History be changed from a Category IV to a Category III based on his rehabilitation. The Government opposes this change, noting that the Defendant's criminal history was correctly calculated. The Court declines to alter Defendant's criminal history category. This objection is overruled.

Second, based on his status as a family man and his rehabilitation, the Defendant requests a lower than Guideline sentence, based on the Section 3553(a) factors. The Government opposes this variance based on Defendant's repeated failures to register. Mr. Roebuck spoke eloquently about the changes he has made in his life. However, the Court cannot completely ignore Mr. Roebuck's repeated failures to register. The Court will vary slightly, imposing a sentence of twelve months and one day.

### III. CONCLUSION

The Court agrees that courts sentencing registered sex offenders should employ the categorical approach when comparing an underlying sex offense to SORNA's definitions. Applying this approach, the Court determines that Mr. Roebuck is a Tier I sex offender. Taking this ruling into account, Defendant has a total offense level of 10 and a criminal history category of

IV. The advisory Guideline sentence is 15 to 21 months imprisonment. After granting a downward variance based on Section 3553(a) factors, the Court commits Mr. Roebuck to the custody of the Bureau of Prisons for a term of 12 months and one day. He must comply with other conditions and terms of release, as detailed in his Judgment.

**THEREFORE**,

**IT IS ORDERED** that:

(1) Defendant's objection to the presentence report (Doc. 35) is **SUSTAINED**;

(2) Defendant's Motion for a Downward Departure (Doc. 35) is **GRANTED** in part and **DENIED** in part; and

(3) The United States' objection to the presentence report (Doc. 41) is **OVERRULED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**